IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

| | | |
|---|---|---|
| ROBERT PATRICK TAYLOR, # 434403 | * | |
|     Plaintiff, | | |
|        v. | * | CIVIL ACTION NO. RDB-15-126 |
| MEDICAL DEPARTMENT (at B.C.D.C.) | * | |
| MENTAL HEALTH DEPARTMENT | | |
|  (at B.C.D.C.) | * | |
| DR. HERMAN | | |
| DR. JIM SOKAL | * | |
|     Defendants. | | |
| | ***** | |

## **MEMORANDUM OPINION**

**S**elf-represented inmate Robert Patrick Taylor ("Taylor") filed a Complaint pursuant to 42 U.S.C. § 1983. ECF No. 1. Defendants Herman, Sokol and Conmed Healthcare Management, Inc. ("Conmed")[1] have filed a Motion to Dismiss or, in the Alternative, Motion for for Summary Judgment (ECF No. 14) and Exhibits (ECF No 15) to which Taylor has filed an Opposition (ECF No. 18) and Defendants have filed a Reply.[2] ECF No. 19. A hearing is not

---

[1] Counsel has accepted service for defendants Medical Department and Mental Health Department at B.C.D.C. as Conmed, which provides health services at BCDC and notes that Defendant Jim Sokol is a registered nurse, not a physician. The Clerk shall take all necessary steps to substitute Conmed for Defendants Medical Department and Mental Health Department at B.C.D.C. and to amend the docket to reflect the correct spelling of Sokol's surname and medical designation.

[2] Taylor filed a Surreply on July 16, 2015, without leave of the Court. ECF No. 20. As a general rule, this Court will not allow parties to file surreplies. *See* Local Rule 105.2(a) (D. Md. 2014); *see also MTB Servs., Inc. v. Tuckman–Barbee Const. Co.,* No. 1:12–cv–02109–RDB, 2013 WL 1224484, *6 (D. Md. Mar. 26, 2013). In *MTB Services,* this Court explained that a "party moving for leave to file a surreply must show a need for a surreply." *Id.* (internal citation omitted). A court may permit a plaintiff to file a surreply if "a defendant raises new legal issues or new theories in its reply brief." *Id.* (citing *TECH USA, Inc. v. Evans,* 592 F.Supp.2d 852, 862 (D. Md. 2009)). Further, "[s]urreplies may be permitted when the moving party would be unable to contest matters presented to the court for the first time in the opposing party's reply." *MTB Servs.,* 2013 WL 1224484 at *6; *see also Khoury v. Meserve,* 268 F.Supp.2d 600, 605 (D. Md. 2003). Inasmuch as Defendants did not raise new arguments or file new exhibits in their Reply, the Court shall strike Taylor's Surreply.

needed to resolve the issues.  *See* Local Rule 106.5 (D. Md. 2014).  For reasons to follow, Defendants' Motion to Dismiss or, in the Alternative, Motion for Summary judgment, construed as a motion for summary judgment IS GRANTED and judgment will be entered in their favor.

## BACKGROUND

### Plaintiff's Allegations

Taylor, who at all times referenced in the Complaint was a detainee housed at the Baltimore County Detention Center ("BCDC") in Towson, Maryland, claims that upon his December 26, 2013 intake at BCDC his Synthroid medication was confiscated.  He alleges that the first month he was confined at BCDC he was not provided his medication for hypothyroidism.  Taylor additionally contends that despite his numerous sick-call and "psych" slips, he was not treated for a "scabbies" condition, but was placed in a quarantine cell within the BCDC medical ward.  Taylor states that based upon some "honest" comments he made in front of Defendant Herman,[3] he was placed on a suicide watch.  He alleges that he was denied meals for two days, refused showers and the ability to call his family, and was housed with insane prisoners.  ECF No. 1.  He seeks the award of monetary damages.

## STANDARD OF REVIEW

This court reviews the facts and all reasonable inferences in the light most favorable to the nonmoving party. *See Scott v. Harris,* 550 U.S. 372, 378 (2007); *Erickson v. Pardus*, 551 U.S. 89, 94 (2007).  Such review liberally construes Taylor's pleadings in light of the fact that he is self-represented.  *See Gordon v. Leek*, 574 F.2d 1147, 1151 (4th Cir. 1978).

---

[3]  Taylor alleges that he stated loudly "what if I had a legitimate excuse to request mental health help and started to cut myself.  You don't know if I have been in a mental hospital my whole life or have a history of suicide or what."  ECF No. 1, Attachment at pg. 7.

The purpose of a Rule 12(b)(6) motion [to dismiss] is to test the sufficiency of a complaint. *See Burney v. Cuccinelli,* 616 F.3d 393, 408 (4th Cir. 2010). A Rule 12(b)(6) motion constitutes an assertion by the defendant that, even if the facts that plaintiff alleges are true, the complaint fails, as a matter of law, "to state a claim upon which relief can be granted." Fed R. Civ. P. 12(b)(6). Therefore, in considering a motion to dismiss under Rule 12(b)(6), a court must "accept[ ] as true the well-pled facts in the complaint and view[ ] them in the light most favorable to the plaintiff." *Brockington v. Boykins,* 637 F.3d 503, 505 (4th Cir. 2011) (citation omitted).

Ordinarily, a court cannot consider matters outside the pleadings or resolve factual disputes when ruling on a Rule 12(b)(6) motion. *See Bosiger v. U.S. Airways,* 510 F.3d 442, 450 (4th Cir. 2007). If the court does consider matters outside the pleadings, "the motion must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed.R.Civ.P. 12(d); *see also Finley Lines Joint Protective Bd. Unit 200 v. Norfolk S. Corp.,* 109 F.3d 993, 997 (4th Cir. 1997) ("[A] Rule 12(b)(6) motion to dismiss supported by extraneous materials cannot be regarded as one for summary judgment until the district court acts to convert the motion by indicating that it will not exclude from its consideration of the motion the supporting extraneous materials."). This Court deems it appropriate to consider the extraneous materials, as they are likely to facilitate disposition of this case. Accordingly, Defendants' Motion shall be treated as a motion for summary judgment.

Rule 56(a) of the Federal Rules of Civil Procedure provides that the "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact

and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).  The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion. "By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247–48 (1986) (emphasis in original).

"A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.' " *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 522 (4th Cir. 2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). The Court must "view the evidence in the light most favorable to…the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 645 (4th Cir. 2002). At the same time, the Court also must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (quoting *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir.1993)) (internal quotation marks omitted) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986)).  The Court must view the evidence in the light most favorable to the nonmovant and draw all justifiable inferences in his favor.  S*ee Greater Baltimore Ctr. for Pregnancy Concerns, Inc. v. Mayor and City Council of Baltimore,* 721 F.3d 264, 283 (4th Cir. 2013) (citation omitted).  This case shall be analyzed in light of this standard of review.

A federal court must liberally construe pleadings filed by pro se litigants to allow them to fully develop potentially meritorious cases. *See Erickson v. Pardus,* 551 U.S. at 89, 94 (2007); *Cruz v. Beto*, 405 U.S. 319 (1972). The requirement of liberal construction does not mean the court can ignore a clear failure in the pleadings to allege facts which set forth a claim, *see Weller v. Department of Social Services,* 901 F.2d 387, 391 (4th Cir. 1990), or assume the existence of a genuine issue of material fact where none exists. Fed. R. Civ. P. 56(c).

## ANALYSIS

Title 42 U.S.C. § 1983 " 'is not itself a source of substantive rights,' but provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver*, 510 U.S. 266, 271 (1994) (quoting *Baker v. McCollan*, 443 U.S. 137, 144 n. 3 (1979)). A suit under § 1983 allows "a party who has been deprived of a federal right under the color of state law to seek relief." *City of Monterey v. Del Monte Dunes at Monterey, Ltd.,* 526 U.S. 687, 707 (1999). To state a claim under § 1983, a plaintiff must allege that (1) a right secured by the Constitution or laws of the United States was violated, and (2) that the alleged violation was committed by a person acting under the color of state law. *See West v. Atkins*, 487 U.S. 42, 48 (1988).

### Medical Defendants

A pretrial detainee's medical claims sound under the Due Process Clause of the Fourteenth Amendment. There is no practical difference, however, between the due process standard and the Eighth Amendment protection standards, *i.e.*, substantial risk and deliberate indifference, available to either a detainee or a convicted prisoner. *See Brown v. Harris*, 240 F.3d 383, 388 (4th Cir. 2001); *Hill v. Nicodemus*, 979 F. 2d 987, 990-91 (4th Cir. 1992); *Loe v. Armistead*, 582 F.2d 1291, 1294 (4th Cir. 1978). Consequently, to establish a claim of this nature

Taylor must satisfy two requirements.  First, he must satisfy the "objective" component by illustrating a serious medical condition.  *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992); *Estelle v. Gamble*, 429 U.S. 97, 105 (1976); *Shakka v. Smith*, 71 F.3d 162, 166 (4th Cir. 1995); *Johnson v. Quinones*, 145 F.3d 164, 167 (4th Cir. 1998).   If this first element is satisfied, Taylor must then prove the second subjective component of the Eighth Amendment standard by showing deliberate indifference on the part of prison officials or health care personnel.  *See Wilson v. Seiter*, 501 U.S. 294, 303 (1991) (holding that claims alleging inadequate medical care are subject to the "deliberate indifference" standard outlined in *Estelle*, 429 U.S. at 105-06).  "[D]eliberate indifference entails something more than mere negligence [but] is satisfied by something less than acts or omissions for the very purpose of causing harm or with knowledge that harm will result." *Farmer v. Brennan*, 511 U.S. 825, 835 (1994).  Prison personnel "must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and [they] must also draw the inference." *Id*. at 837.

Defendant Conmed argues that the Complaint against it is subject to dismissal as *respondeat superior* liability has no application under § 1983.   Defendants Herman and Sokol assert that Taylor has failed to demonstrate that they were deliberately indifferent to his medical and psychological needs.

The record shows that on or about January 17, 2014, Taylor made comments threatening suicidal behavior in order to talk to the prison psychiatrist about the effectiveness of his BusPar[4] medication.  ECF No. 14-1.  His remarks resulted in his assignment to suicide watch.  Upon examination, he was not found to have any psychosis or mania.  *Id*.  He was monitored by mental

---

[4]  BusPar, or busiprone, is an anti-anxiety medicine that affects chemicals in the brain that may become unbalanced and cause anxiety.  *See* http://www.drugs.com/buspar.html.

health staff and was downgraded from suicide watch to intermediate watch status on January 17, 2014, when the staff found the transitional status to be appropriate, ECF No. 14-2. After further monitoring, on January 20, 2014, Taylor was downgraded from intermediate watch status to regular population. ECF No. 14-3. Health care providers continued to monitor Taylor and scheduled an appointment with him on January 22, 2014, to discuss the death of his father. It was determined that he was not at risk and was not placed back on watch status. ECF Nao. 14-4.

Defendants argue that Taylor complained of no symptoms related to his allegedly untreated hypothyroid condition. The records reflect that on January 1, 2014, Taylor submitted a sick-call request complaining of digestive problems and asking to be placed on a "high calorie" diet because of his 327 pound weight. ECF No. 14-6. He made no mention of his hypothyroid condition and, when seen by medical staff, a scattered rash was noted and he was prescribed A & D Ointment for a two week period. On January 6, 2014, Taylor filed a sick-call request asking to be medically cleared to work in the kitchen. ECF No. 14-7. On January 14, 2014, he filed a third sick-call slip, claiming that his scabies[5] condition had returned and was causing him to scratch, bleed, and go without sleep. He claimed that he no longer had hydrocortisone cream and he never received A & D ointment. ECF No. 14-8. The following date, January 15, 2014, Taylor submitted a request for hydrocortisone cream and then asked for his Synthroid medication

---

[5] Scabies is a skin infestation caused by a tiny microscopic bug known as the *human itch mite*. This mite is usually passed from skin to skin. It can also be transmitted through infested clothing or bedding. *See* http://www.healthline.com/health/scabies#Overview1.

for hypothyroidism.[6] He claimed that it was his fifth request and he was feeling "sick and violent." ECF No. 14-9. The record indicates that on January 17, 2014, Taylor's scabies was treated with Permethrin 5% and hydrocortisone cream. ECF No. 14-11.

The record shows that on January 13, 2014, the Medical Department informed Taylor that he was scheduled for a January 27, 2014 chronic care clinic visit related to his hypothyroidism condition. ECF No. 14-10. On January 19, 2014, Taylor's prescription for Synthroid was confirmed and was checked for confirmation of his current dose. ECF No. 14-11. Taylor began receiving his Synthroid medication on that date. Defendants state that after Taylor was started on his Synthroid medication there were numerous occasions on which he refused to show for medical call and declined his Synthroid and BuSpar medications. ECF No. 14-12

In his opposition, Taylor claims that Defendants responded in an "inconsiderate" and "nonchalant" manner towards mental health patients. ECF No. 18. He claims that he never made any statements saying "you don't know if I have been in a mental hospital my whole life or have a history of suicide or what." Taylor claims that Defendants have offered no proof that he was ever in a mental hospital. ECF No. 18. He again states that Defendants were unresponsive to his grievances. Taylor claims that he requested treatment on a daily basis for hypothyroidism, a reoccurrence of scabies, and an improper dosage of anti-depression medication that was not effective. He alleges that Defendants records show that starting December 26, 2013, he went without his Synthroid medication for three weeks. He states that the medication refusal forms are "null and void" because they do not include his signature. *Id*.

---

[6] Synthroid (levothyroxine) is a replacement for a hormone normally produced by your thyroid gland to regulate the body's energy and metabolism. Levothyroxine is given when the thyroid does not produce enough of this hormone on its own. *See* http://drugs.com/synthroid.html.

In their Reply, Defendants Sokol, Herman, and Conmed assert that Taylor's Complaint makes reference to statements he made in front of BCDC medical staff regarding prior admission to a mental hospital, his previously cutting himself, and his prior assignment to suicide watch. ECF No. 19.

To the extent the complaint sues Conmed based solely upon vicarious liability, Circuit law is clear. Principles of municipal liability under § 1983 apply equally to a private corporation. Therefore, a private corporation is not liable under § 1983 for actions allegedly committed by its employees when such liability is predicated solely upon a theory of *respondeat superior*. *See Austin v. Paramount Parks, Inc.,* 195 F.3d 715, 727-28 (4th Cir. 1999); *Powell v. Shopco Laurel Co.*, 678 F.2d 504, 506 (4th Cir. 1982). The complaint against Conmed shall be dismissed.

Defendants Herman and Sokol are entitled to summary judgment in their favor; however, in granting summary judgment the court in no way implies that Taylor was not entitled to medical treatment for his condition. That right to treatment "limited to that which may be provided upon a reasonable cost and time basis and the essential test is one of medical *necessity* and not simply that which may be considered merely *desirable*." *Bowring v. Godwin,* 551 F.2d 44, 47-48 (4th Cir. 1977). The record evidence indicates that Taylor's mental health concerns were addressed as he was placed on suicide watch and intermediate assignments until such time as mental health staff concluded he was eligible for population. Further, the record shows that when Taylor submitted sick-call requests regarding his hypothyroid treatment, he was, with one week, placed on Synthroid medication. Finally, the record shows that Taylor was provided with topical ointments upon his sick-call requests regarding his scabies. His dispute with the medical

and mental health care he received are reflective of his frustration regarding his care, but "[d]isagreements between a prisoner and a physician over the inmate's proper medical care do not state a §1983 claim unless exceptional circumstances are alleged." *Wright v. Collins*, 766 F.2d 841, 849 (4th Cir. 1985), citing *Gittlemacker v. Prasse,* 428 F.2d 1, 6 (3rd Cir. 1970). There are no exceptional circumstances alleged in this case.

## CONCLUSION

Having found no genuine dispute of material fact justifying a trial on the merits in this case, Defendants' dispositive Motion, converted to a motion for summary judgment, shall be granted. A separate Order shall be entered forthwith.

Date: September 4, 2015        _____/s/_____
                               RICHARD D. BENNETT
                               UNITED STATES DISTRICT JUDGE